J-A19007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN FIRELY AND HOLLY FIRELY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| RALPH B. WARNER, IV, DANIEL GLENNON AND ROBERT SEVILLE, TRUSTEES FOR ADAM WARNER, | |
| Appellants | No. 3415 EDA 2016 |

Appeal from the Judgment Entered December 9, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 09-32019

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 26, 2017**

Appellants, Ralph B. Warner, Daniel Glennon and Robert Seville, Trustees for Adam Warner, appeal from the judgment entered on December 9, 2016, against Appellants and in favor of Appellees, John Firely and Holly Firely, in the amount of $70,000.00.[1]  After careful review, we affirm.

_____

[1] Appellants purport to appeal from the October 3, 2016 order denying their post-trial motion.  Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions.  ***See Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511 (Pa. Super. 1995).  Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction.  ***Drum v. Shaull Equipment and Supply, Co.***, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001).  Here, Appellants filed a notice of appeal prematurely on October 25, 2016, prior to the entry of judgment.  However, the record reflects that judgment was entered on December 9, 2016.  In accordance with the Pennsylvania Rules of Appellate Procedure, we treat Appellants' notice of appeal as if it

*(Footnote Continued Next Page)*

The trial court provided the following summary of the relevant facts and procedural history of this case in its Pa.R.A.P. 1925(a) opinion:

> [O]n November 7, 2008, [Appellees] offered to purchase the subject property from the above-captioned [Appellants], for the purchase price of $700,000.00. In furtherance thereof, [Appellees] placed $70,000[.00] in escrow as a deposit. Both parties were represented by realtors.
>
> On December 3, 2008, [Appellees] signed the Agreement of Sale [("Agreement")]; [Appellants] executed the same on December 9, 2008.
>
> On December 13, 2008, [Appellees] initiated and executed the Agreement with the addenda, and forwarded, via e-mail, a fully executed copy of the Agreement to [Appellees'] realtor that same day. The Agreement … at issue is a standard agreement of sale for real estate, approved and recommended by the Pennsylvania Association of Realtors.
>
> The aforementioned Agreement required a fifteen (15) day water and sewer inspection contingency period. The "start date" for inspections began on December 14, 2008. At trial, the parties disputed how to calculate the fifteen (15) days from that date.
>
> [Appellees'] contractor inspected the well and septic systems and indicated that the septic system was unsatisfactory, and that the well water did not meet established portability standards.
>
> Therefore, on December 29, 2008, [Appellees'] realtor, Kristin Smith [("Ms. Smith")], e-mailed [Appellants'] realtor, Thomas McCabe [("Mr. McCabe")], and indicated that neither the well nor the septic systems passed inspection, and that [Appellees] were not willing to go forward with the purchase unless [Appellants] were willing to negotiate the septic issue.

*(Footnote Continued)* ————————————

were filed after the entry of judgment and on the date thereof. ***See*** Pa.R.A.P. 905(a)(5). Hence, the instant appeal is properly before this Court.

- 2 -

On January 2, 2009, [Mr. McCabe] e-mailed [Ms. Smith] and indicated that [Appellants] were not willing to repair the septic system. On January 6, 2009, [Appellees] signed a Notice of Termination of Agreement of Sale and Agreement of Sale Release and Distribution of Deposit Money. At that point, [Appellants] did not sign the release. Instead[,] the parties' realtors continued to negotiate up until February 4, 2009, in an attempt to purchase the subject property.

Ultimately, the parties failed to come to an agreement, and [Appellees] did not purchase the property. [Appellants] refused to return [Appellees'] deposit monies.

On October 15, 2009, [Appellees] filed suit against [Appellants,] seeking back their $70,000.00 deposit under the Agreement.

On December 21, 2009, [Appellants] filed an answer, new matter[,] and counterclaim to [Appellees'] complaint. The counterclaim sought a declaratory judgment that [Appellees] breached the agreement and were in default (count I); specific performance to retain the deposit monies under the agreement (count II); mitigated damages on the sale to the third party (count III); and, incidental and consequential damages caused by the property being vacant when the deal terminated (count IV). The trial court precluded [Appellants] from pursing [*sic*] count IV for incidental and consequential damages at trial.

In May of 2013, [Appellants] sold their property for $425,000.00[,] to a third party. In the interim, [Appellants] had negotiated with several other potential buyers, and had entered into several agreements of sale, which never came to fruition. [Appellants] also leased the property for a portion of time prior to sale.

On September 29, 2016, after a bench trial on the matter, the trial court found in favor of [Appellees] and against [Appellants], and awarded [Appellees] their $70,000.00 deposit back. With reference to [Appellants'] counterclaim, the trial court found against [Appellants].

On November 28, 2016, the trial court denied [Appellants'] motion for post-trial relief.

Trial Court Opinion ("TCO"), 1/24/17, at 1-3 (citations to record and unnecessary capitalization omitted).

On October 25, 2016, Appellants filed a timely notice of appeal, followed by a timely, court-ordered Rule 1925(b) concise statement of errors complained of on appeal. Appellants present the following issues for our review:

> A. Whether Appellants' [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal [c]omplies with Pa.R.A.P. 1925(b) in order to permit this appeal?
>
> B. Whether the trial court erred as a matter of law and/or abused its discretion when its determination is not supported by competent evidence in the record?

Appellants' Brief at 4.

To begin, we must determine whether Appellants' Rule 1925(b) statement complies with the Pennsylvania Rules of Appellate Procedure.

> Whenever a trial court orders an appellant to file a concise statement of matters complained of on appeal pursuant to Rule 1925(b), the appellant *must* comply in a timely matter. ***Commonwealth v. Castillo***, … 888 A.2d 775, 780 (Pa. 2005); ***see also Lineberger v. Wyeth***, 894 A.2d 141, 148 n.4 (Pa. Super. 2006) (noting that principles surrounding application of Rule 1925(b) enunciated in criminal cases apply equally to civil cases). Failure to comply with a Rule 1925(b) order will result in waiver of all issues raised on appeal. ***Castillo***, … 888 A.2d at 780; ***Lineberger***, ***supra*** at 148. Furthermore, any issue not raised in an appellant's Rule 1925(b) statement will be deemed waived for purposes of appellate review. ***Lineberger***, ***supra*** at 148.

***

> [T]his Court has also addressed the issue of Rule 1925(b) statements that are vague and/or overly broad. We have consistently held that a Rule 1925(b) statement is not in

compliance with the Rules of Appellate Procedure if it is so vague and broad that it does not identify the specific questions raised on appeal. **See**, *e.g.*, **Wells v. Cendant Mobility Financial Corp.**, 913 A.2d 929, 932-34 (Pa. Super. 2006); **Lineberger**, *supra* at 148-49.

**Hess v. Fox Rothschild, LLP**, 925 A.2d 798, 803 (Pa. Super. 2007) (emphasis added in original).

Here, the trial court requests that this appeal "be quashed as a violation of [Rule] 1925(b)(4)(ii)," based on its contention that Appellants' Rule 1925(b) statement contains only generic allegations of error and in no way specifies how the trial court erred. TCO at 4. We agree that the errors set forth in Appellants' Rule 1925(b) statement are vague. However, before we conclude that this appeal should be quashed, we must examine the record to determine whether the trial court provided a basis for its ruling. This Court has previously stated,

> unless one knows the basis for a court's order, there is no way to specifically challenge its rationale….
>
> When one seeking to appeal has no basis in the record to discern the basis for the order being challenged, Pa.R.A.P. 1925(b) must not be employed as a trap to defeat appellate review, requiring specifically stated challenges to the resolution of issues before there has been any revelation as to how the issues have been resolved.

**Hess**, 925 A.2d at 804 (quoting **Ryan v. Johnson**, 564 A.2d 1237, 1239 (Pa. 1989)).

As we elaborated in **Hess**,

> [w]hen the reasons for a trial court's ruling are vague or not discernable from the record, then an appellant may be *forced* to file a vague Rule 1925(b) statement, and it would be unjust to consider such filing a violation of the Rule…. [U]nder these

limited circumstances … it is not appropriate to find waiver or to dismiss the appeal based on a vague Rule 1925(b) statement.

*Id.* (emphasis added in original and internal citations omitted).

After careful review of the record, we discern that the trial court failed to provide any rationale for its decision. Neither the record nor the order itself is informative in this regard, and the court did not file a memorandum in support of its decision. Accordingly, we conclude that the issues raised by Appellants on appeal are not waived for failure to file a sufficiently specific Rule 1925(b) statement. Moreover, the trial court's Rule 1925(a) opinion provides a detailed explanation of its rationale for the ruling which is the subject of this appeal. Thus, our ability to conduct meaningful and effective appellate review is not impeded. We now turn to the merits of this appeal.

It has been well established that:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2007) (internal citations and quotation marks omitted).

Appellants claim that the trial court's ruling in favor of Appellees is not supported by competent evidence in the record. Specifically, Appellants allege that Appellees failed to timely exercise their right to terminate the Agreement within the allotted contingency period and, therefore, were required to purchase the Property from Appellants in accordance with the terms of the Agreement. In the alternative, Appellants argue that even if Appellees' alleged notice of intent to terminate the Agreement is deemed timely, the notice was not in the proper format. Hence, Appellants conclude that Appellees would still be bound to complete the sale as provided by the terms of the Agreement. **See** Appellants' Brief at 18, 22.

In order to address Appellants' claim, we first examine the relevant portions of the underlying Agreement. The contract clearly reflects that Appellees elected a fifteen (15) day contingency period to allow for property, water, and sewer inspections. **See** Agreement, 12/13/08, at 4-6 ¶¶ 11-15.[2] These contingencies are governed by "Option 1" under Paragraph 10 of the Agreement, which further provides:

**10. Inspection Contingency Options**

The inspection contingencies elected by Buyer in Paragraphs 11-15 are controlled by the Options set forth below. The time periods stated in those options will apply to all inspection

---

[2] Paragraphs 11 through 15 of the Agreement expressly provide that each elected contingency period is fifteen (15) days from the execution date, if not otherwise specified. No alternative time frame for the elected contingencies was specified in the contract by the parties. **Id.**

contingencies in paragraphs 11-15 unless otherwise stated by this Agreement.

Option 1. Within the Contingency Period as stated in Paragraphs 11-15, Buyer will:

1. Accept the Property with the information stated in the report(s) and agree to the Release and/or Releases in Paragraph 27 of this Agreement, OR

2. If Buyer is not satisfied with the information stated in the report(s), terminate this Agreement by written notice to the Seller, with all deposit monies returned to the Buyer according to the terms of paragraph 20 of this Agreement, OR

3. Enter into a mutually acceptable written agreement with Seller providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender(s), if any.

If Buyer and Seller do not reach a written agreement during the specified Contingency Period, and Buyer does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

*Id.* at 4 ¶10.

In addition, paragraph 5 of the Agreement states, in relevant part:

**5. DATES/TIMES OF THE ESSENCE**

(A) The settlement date and all other dates and times referred to for the performance of any of the obligations of this Agreement are of the essence and are binding.

(B) For purposes of this Agreement, the number of days will be counted from the date of execution, excluding the day this Agreement was executed and including the last day of the time period. The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of

> this Agreement by signing and/or initialing it. All changes to this Agreement should be initialed and dated.

*Id.* at 2 ¶5.

Additionally, paragraph 29 of the Agreement grants Appellants the option to retain the $70,000.00 deposit in escrow, in the event that Appellees breach any terms or conditions of the contract. *See id.* at 9 ¶29. In accordance with paragraph 30, all deposit monies must be returned to Appellees in the event that Appellees terminate the Agreement pursuant to any right granted therein, and the Agreement will be void. *Id.* at ¶30.

In the instant matter, the trial court determined that the evidence produced at trial established Appellees were entitled to the return of their $70,000.00 deposit, pursuant to paragraph 30 of the Agreement. After careful review, we discern sufficient evidence in the record to support the court's findings.

First, the trial court explained:

> Under the Agreement, [Appellees] had fifteen (15) days from the date of the contract execution to accept the information in the inspections and proceed with the sale or to obtain a written agreement from the [Appellants] to provide for any necessary repairs/credit at settlement. If neither of these events occurred during the fifteen (15) day period, then [Appellees] accepted the property and could not recoup the deposit.
>
> The evidence showed that [Appellees] initialed the last changes to the Agreement and forwarded the same to [Appellants'] agent, [Mr.] McCabe, on December 13, 2008.
>
> On December 15, 2008, [Appellants'] agent, [Mr.] McCabe, sent an e-mail to [Appellant, Mr. Warner,] stating, "[t]he finalized contract was received by e-mail on Saturday[,]

December 13, 2008. **The start date for all buyer property inspections is December 14, 2008**.["] [Appellees'] agent, [Ms.] Smith, testified at trial that based on this e-mail, she believed **[Appellees] had from the <u>day after the 14th</u>, December 15, 2008, through December 29, 2008, to provide notice on the inspections.**[3]

Moreover, in an e-mail dated January 2, 2009, from [Appellant, Mr. Warner,] to [Mr.] McCabe, [Mr.] Warner, too, acknowledged that the last day for termination was December 29, 2008. [Mr.] Warner wrote, "Please notify the buyers we will not remediate the septic system issues or any other issues. The sales price and contingency concessions we have already made were to allow for these types of issues. As you wrote, the buyer should not be able to terminate the agreement of sale at this time based on inspections **since the deadline for termination based on inspections (Dec 29) has passed**. We do not plan on re-inspecting the septic system."

TCO at 7-8 (citations to the record omitted) (emphasis added).

In reaching its decision, the trial court relied on Appellees' expert report, as well as the testimony of Appellees and their realtor, Ms. Smith. *Id.* at 6. The court also indicated that it was not persuaded by Mr. McCabe's testimony, and that it found much of Mr. Warner's testimony to be irrelevant. *Id.* It is well-established that:

In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility

---

[3] On redirect examination, Ms. Smith stated that she often uses the terms "start date" and "execution date" interchangeably. She further revealed that when Mr. McCabe stated by email that the "start date was December 14th," she considered that to be a revised execution date. *See* N.T. Trial, 9/29/16, at 83-84.

determinations or substitute our judgments for those of the factfinder. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 916 (Pa. Super. 2017).

The following portion of the report issued by Appellees' expert, Ellen B. Renish, was reproduced by the trial court in support of its finding that Appellees provided timely notice of termination, in accordance with the Agreement:

The date of December 14, 2008, was indicated as the execution of the Agreement…. This would provide the start date of inspection and reply period as December 15, 2008, through December 29, 2008 by [Appellees] to [Appellant]. This would indicate that [Appellees,] through their agent[, Ms. Smith,] responded timely to the inspections and indicated that they would be terminating in the event [Appellants] were not willing to negotiate the septic repairs/replacement.

**[Appellants'] Agent**[, Mr. McCabe,] **did not respond to this request from [Appellees'] Agent until January 6, 2009.** Their response indicated that they would not negotiate on the cost of repairs to the septic system and that they accepted a purchase price lower than the list price with the thought that repairs would be the responsibility of [Appellees].

The termination of the Agreement … was provided by [Appellees'] Agent on December 29, 2008 by email[;] however, this was not acknowledged by [Appellants] or [Appellants'] Agent. Subsequent to this email response, an additional written termination dated January 6, 2009, and signed by [Appellees] was provided to [Appellants'] Agent confirming the previous email termination.

[Appellants] did not attempt to negotiate repairs as requested by [Appellees] after receiving the reply to the inspection and notification that the septic system had failed. **All**

> correspondence concerning the terms of the Agreement were being conveyed by the Agents of each party ([Appellants] and [Appellees]) throughout this transaction. This is evidenced by emails between the Agents for the parties. It also appears that all changes that were made to the Agreement … did not receive initials by all parties, but emails between the Agents for the respective parties were being conveyed on their behalf. It appears that the response time for [Appellants] to [Appellees] was often disregarded. It is unknown if the Trust made up of multiple individuals was unable to respond as proscribed by the Agreement … and this practice was then followed throughout the course of this transaction.
>
> It is clear that both parties['] Agents had some difference in determining the appropriate date[s] for notification and communication. I believe [Appellees] did notify their Agent timely to respond after inspections were completed. It also appears that [Appellants] may not have been notified by their Agent timely and that may have been due to the nature of having to communicate with multiple sellers.

TCO at 8-9 (emphasis added by trial court).

After emphasizing the parties' timeliness, or lack thereof regarding their dealings with each other, *supra*, the court expressed that it was "unwilling to impose a hyper-technical interpretation on the parties' Agreement, **after the fact**, where the parties themselves failed to strictly abide by the contract terms **during the process**." *Id.* at 9 (emphasis added by trial court). Our courts have held that even where an agreement of sale makes time of the essence, this provision may be waived by conduct of the parties. *See DiGiuseppe v. DiGiuseppe*, 96 A.2d 874, 875 (Pa. 1953) (citing *Cohn v. Weiss*, 51 A.2d 740, 742 (Pa. 1947)); *see also*

*Davis v. Northridge Development Associates*, 622 A.2d 381, 386 (Pa. Super. 1993).

Moreover, the trial court rejected Appellants' claim that Ms. Smith's December 29, 2008 email, stating that Appellees no longer wished to proceed with the sale unless Appellants were willing to negotiate on the septic system issue, was invalid due to improper format.

> [Appellants] failed to provide any support for this argument other than [Mr.] McCabe's conclusory statement. The court was not directed to any language in the Agreement indicating that a buyer must terminate with a specific form, nor did either expert indicate that notice of termination had to be in a specific format.

TCO at 9 (citations to record omitted).

Finally, regarding Appellants' Counterclaim, the trial court found in favor of Appellees, stating that Appellants had "simply failed to meet their burden of proof to establish that any loss on the ultimate sales price was attributable to [Appellees]." TCO at 9. The court elaborated:

> The testimony was clear that the housing market took a sharp downturn in 2008 after the Agreement at issue terminated, a situation obviously out of [Appellees'] control. Also, after the termination, [Appellants] placed the house back on the market for a substantially higher price than they had accepted from [Appellees]. Finally, the Sellers had numerous deals fall through regarding the property at issue for some time post-termination. [Appellees] could not be held responsible for any losses from situations of which they played no role.

*Id.* at 9-10 (citations to record omitted). The trial court's finding is well-supported by the record.

Based on the foregoing, we discern no error of law by the trial court.

Accordingly, we affirm the judgment entered in favor of Appellees.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2017